IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>AMIR MORTAZAVI (01)<br>ROBERT LEISTEN (05)<br>AMY HAASE (06)<br>   A/K/A AMY HAASE KERNE<br>ARNOLD FARBSTEIN (07)<br>ERIC BERKMAN (09)<br>JORGE CUZA (10)<br>KATHREN MCCARTY(11)<br>JAMES ELLIS (12)<br>WALTER STRASH (13)<br>DAVID WOLF (14) | NO. 3:24-CR-049-S |

**GOVERNMENT'S OMNIBUS RESPONSE TO DEFENDANTS' JOINT MOTION
FOR CONTINUANCE AND DEFENDANT WALTER STRASH'S
<u>MOTION TO SEVER AND TO EXTEND PRETRIAL DEADLINES</u>**

NANCY E. LARSON
ACTING UNITED STATES ATTORNEY

*/s/ Marty Basu*
CHAD E. MEACHAM
Assistant United States Attorney
Texas Bar No. 00784584
Email: chad.meacham@usdoj.gov
MARTY BASU
Assistant United States Attorney
Illinois Bar No. 6302360
Email: marty.basu@usdoj.gov
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Tel: (214) 659-8600
Fax: (214) 659-8809

## TABLE OF CONTENTS

I.   Procedural History ............................................................................................... 1

II.  The Court Should Deny Strash's Motion to Sever. ............................................. 4

    A.   Legal Standards ......................................................................................... 5

    B.   Strash has not demonstrated any specific prejudice from spillover evidence warranting a severance. ............................................................. 7

    C.   Strash's rights under the Speedy Trial Act do not offer an independent basis for severance. ................................................................................. 11

III. The Government Opposes a Continuance of the Trial Date. ............................ 12

IV.  The Government Does Not Oppose a Short Continuance of the Pretrial Motions Deadline. .............................................................................................. 13

## TABLE OF AUTHORITIES

**Federal Cases**

*Peterson v. United States*, 344 F.2d 419, 422 (5th Cir. 1965) ................................... 7, 10

*Richardson v. Marsh*, 481 U.S. 200 (1987) ................................................................ 6

*United States v. Ballis*, 28 F.3d 1399, 1408 (5th Cir. 1994) ...................................... 6

*United States v. Bieganowski*, 313 F.3d 264 (5th Cir. 2002) ................................... 10

*United States v. Cortinas*, 142 F.3d 242 (5th Cir. 1998) ........................................... 9

*United States v. Harrelson*, 754 F.2d 1153, 1176 (5th Cir. 1985) ............................ 5

*United States v. Ledezma-Cepeda*, 894 F.3d 686 (5th Cir. 2018) ............................ 6

*United States v. Lewis*, 476 F.3d 369, 383 (5th Cir. 2007) ...................................... 6

*United States v. Nix*, 465 F.2d 90 (5th Cir. 1972) .................................................... 7

*United States v. Owens*, 683 F.3d 93, 98 (5th Cir. 2012) ........................................ 6

*United States v. Rivers*, No. 3:17-CR-460-D, 2018 WL 3549697 (N.D. Tex. July 24, 2018) (J. Fitzwater) ................................................................................................ 12

*United States v. Rocha*, 916 F.2d 219, 228 (5th Cir.1990) ...................................... 9

*United States v. Simpson*, No. 3:09-CR-249-D 06, 2010 WL 4340683 , at *4 (N.D. Tex. Oct. 26, 2010) ......................................................................................................... 12

*United States v. Turner*, 674 F.3d 420 (5th Cir. 2012) ............................................ 7

*United States v. Welch*, 656 F.2d 1039, 1054 (5th Cir. 1981) ................................. 7

*Zafiro v. United States*, 506 U.S. 534 (1993) ........................................................... 5, 6, 7

**Federal Statutes**
18 U.S.C. § 3161(h) .................................................................................................. 11, 12

**Federal Rules**
Federal Rule of Criminal Procedure 8 ..................................................................... 5

Federal Rule of Criminal Procedure. 14 .................................................................. 5

The government, by and through undersigned counsel, files its Omnibus Response to Defendants' Joint Motion for Continuance, (dkt. 207), and Defendant Walter Strash's Motion to Sever and to Extend Pretrial Deadlines, (dkt. 210). In these motions: (1) all defendants minus Strash ask for a continuance of the October 6, 2025, trial date; (2) Defendant Strash asks for a severance from his nine codefendants; and (3) all defendants ask for a continuance of the pretrial motions deadline, currently set for June 2, 2025.

The government opposes the severance of Defendant Strash from his nine other codefendants still set for trial. As detailed more fully below, the charges in this case involve one scheme common to all the defendants in this case, including Defendant Strash. While Defendant Strash may not be named in every count, Strash is inextricably intertwined with his nine codefendants. A severance will likely result in the government having to duplicate the trial against Strash in a trial against the other defendants, without remedying any obvious prejudice. Therefore, the government respectfully requests that the Court deny Defendants' Strash's motion to sever.

The government also opposes the Defendants' Joint Motion for Continuance. While the government acknowledges the substantial discovery produced to the defendants, defendants have had—and will have—several months' time to review all of it ahead of the October 6, 2025, trial date.

Finally, the government does not oppose a short extension of the pretrial deadlines motion for any defendant.

I.     **Procedural History**

On February 21, 2024, the grand jury returned a two-count indictment against

twelve defendant individuals and two defendant corporate entities related to allegations of health care fraud. (Indictment, dkt 1). The indictment generally alleges that two pharmacy owners, Defendants Amir Mortazavi and Arvin Zeinali (collectively, "Defendant Pharmacy Owners"), entered into an agreement with the ten defendant doctors, including Defendant Strash, to have the doctors refer profitable prescriptions to the Defendant Pharmacy Owners' pharmacies in exchange for the Defendant Pharmacy Owners paying kickbacks to the doctors, some of which were paid through the two defendant corporate entities. (*Id*.).

Count One charges all fourteen defendants, including Defendant Strash, with a conspiracy, in violation of 18 U.S.C. § 371, to commit two offenses against the United States: (a) Conspiracy to violate the Travel Act by violating the Texas Commercial Bribery Statute, in violation of 18 U.S.C. § 1952(a)(1) and (a)(3); and (b) Conspiracy to Deny Patients their Intangible Right to Honest Services, in violation of 18 U.S.C. §§ 1343 and 1346. (Ind., at ¶28).

Count One specifically alleges that the purpose and object of the conspiracy was to exchange "**concealed** bribes and kickbacks." (*Id*. at ¶29)(emphasis added). Count One further alleges as part of the "Manner and Means" section that "bribes and kickbacks were paid to referring physicians under the guise that the bribes and kickbacks were legitimate returns on investment in MSOs [managed services organizations]," like the two Defendant corporate entities. (*Id*. at ¶30.d).

Count Two charges thirteen defendants—that is, all defendants with the exception of Defendant Strash—with Conspiracy to Commit Money Laundering, in violation of 18

U.S.C. § 1956(h). (Ind., at ¶33). Specifically, Count Two charges the defendants with knowingly conducting and attempting to conduct financial transactions affecting interstate commerce, which transactions involved the proceeds of specified unlawful activity. (*Id.*). Count Two further defines the specified unlawful activities as: (a) conspiracy to commit commercial bribery as charged in Count One; (b) conspiracy to commit wire fraud by deprivation of intangible right of honest services as charged in Count One; and (c) conspiracy to commit healthcare fraud. (*Id.*). Count Two further alleges in its "Manner and Means" section that to disguise and conceal the source of the illegal bribes and kickbacks, the pharmacies…funneled the bribes and kickbacks to the doctors through various MSOs." (*Id.* at ¶38.a).

The Court initially set the trial for May 13, 2024. (Dkt. 104). On March 19, 2024, citing the voluminous discovery in the case, all defendants joined in an unopposed motion to declare the case complex under the Speedy Trial Act and continue the trial. (Dkt. 105). The Court subsequently granted the motion and continued the trial date to its current setting, October 6, 2025. (Dkt. 136).

Since the indictment was returned, four defendants have pled guilty and/or filed plea papers. In Spring 2024, the two defendant corporate entities and one of the Defendant Pharmacy Owners, Arvin Zeinali, filed plea papers. (*See* Dkt. 112, 120, 123). All three were subsequently rearraigned and their guilty pleas accepted by the Court. (*See* Dkt. 159, 177, 178). In March 2025, one of the defendant doctors, Barry Weinstein, filed plea papers. (Dkt. 194). His rearraignment is set for June 17, 2025. (Dkt. 203). Assuming Weinstein moves forward with his guilty plea and the Court accepts his plea,

**Government Omnibus Response to Motion for Severance, Motion for Continuance—Page 3**

ten remaining defendants will be set for trial on October 6, 2025.

On May 29, 2025, nine defendants—that is, all remaining defendants who have not filed plea papers except for Defendant Strash—filed their Joint Motion for Continuance, asking that the Court continue the trial to at least January 20, 2026, or later. (Joint Motion to Continue, dkt. 207). In support of that motion, the defendants again cited the voluminous amount of discovery that the government produced and asked the Court for additional time to prepare for trial.[1]  (*Id.*).

On June 2, 2025, Defendant Strash filed his Motion to Sever and to Extend Pretrial Deadlines. (Motion to Sever, dkt. 210). Strash based his severance motion not only because of "spillover prejudice" from evidence related to uncharged counts, which is discussed in more detail in the proceeding section, but also asserted his rights under the Speedy Trial Act to oppose the remaining defendants' motion to continue and go forward with the October 6, 2025, trial date. (*Id.*). Strash also asked for a continuance of the pretrial motions deadline. (*Id.*).

## II. The Court Should Deny Strash's Motion to Sever.

The two-count indictment arises out of one scheme involving the same series of acts and transactions in furtherance of that overarching scheme: pharmacy owners paying kickbacks to doctors in exchange for prescription referrals. This is true regardless of the fact that the indictment contains two separate conspiracy counts or that Strash is only

---

[1] The government's last discovery production to defendants was in approximately November 2024, approximately eleven months prior to the current trial date. Since then, the government has made additional discovery productions to defendants but those have consisted largely of discovery previously produced that the government wished to highlight for the defendants as a courtesy.

**Government Omnibus Response to Motion for Severance, Motion for Continuance—Page 4**

named in one count. Strash is being accused of accepting kickbacks from the exact same pharmacy owners in the exact same manner as his eight codefendant doctors set for trial. That he is not also specifically charged with money laundering, where the transactions supporting the money laundering count are the same transactions in furtherance of the scheme where he is charged, is of no moment. While certain pieces of evidence may be specific to individual defendants, nearly the entire trial against Strash will be duplicated in a hypothetical second trial against the other codefendants. In other words, it would undoubtedly be an inefficient use of judicial resources for the defendants to be severed into two separate trials. Strash has failed to assert any prejudice so compelling that it would warrant that inefficiency.

### A.   Legal Standards

Rule 8 of the Federal Rules of Criminal Procedure governs the joinder of offenses and defendants and is designed to promote judicial economy and efficiency and to avoid a multiplicity of trials. FED. R. CRIM. P. 8; *See Zafiro v. United States*, 506 U.S. 534, 540 (1993). Where joinder is proper under Rule 8, a district court may still grant a severance under Rule 14 where joinder "appears to prejudice a defendant." FED. R. CRIM. P. 14. To determine the appropriateness of severance, the district must "balance the public's interest in economy of judicial administration with the possible prejudice to the defendant[s]." *United States v. Harrelson*, 754 F.2d 1153, 1176 (5th Cir. 1985).

But the Supreme Court and the Fifth Circuit have been clear as to their overwhelming preference for joint trials over severance. The Supreme Court has consistently held that that "joint trials "play a vital role in the criminal justice system,"

"promote efficiency," and "'serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.'" *Zafiro*, 506 U.S. at 537 (quoting *Richardson v. Marsh*, 481 U.S. 200, 210 (1987)). In this Circuit, "[j]oinder is the rule rather than the exception." *United States v. Mikolajczyk*, 137 F.3d 237, 240 (5th Cir. 1998). This presumption follows "from the belief that '[d]efendants who are indicted together should generally be tried together, particularly in conspiracy cases.'" *United States v. Ledezma-Cepeda*, 894 F.3d 686, 690 (5th Cir. 2018).

To overcome the "heavy presumption" against severance, a defendant must show that: "(1) the joint trial prejudiced him to such an extent that the district court could not provide adequate protection; and (2) the prejudice outweighed the government's interest in economy of judicial administration." *Ledezma-Cepeda*, 894 F.3d at 690 (quoting *United States v. Owens*, 683 F.3d 93, 98 (5th Cir. 2012)). The Fifth Circuit has further held that the burden to show prejudice lies with the defendant, and it is a "difficult one." *United States v. Ballis*, 28 F.3d 1399, 1408 (5th Cir. 1994).

In order to satisfy the first prong, the defendant must show a "specific compelling prejudice." *United States v. Lewis*, 476 F.3d 369, 383 (5th Cir. 2007). District courts should only resort to severance under this rule "'if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.'" *Owens*, 683 F.3d at 98 (quoting *Zafiro*, 506 U.S. at 539). Indeed, "[t]he defendant must show something more than the fact that a separate trial might offer him a better chance of an acquittal." *Id*. For example, bare allegations of potential prejudice are insufficient to meet this burden.

*United States v. Quintero*, 872 F.2d 107, 113 (5th Cir. 1989).

As the Supreme Court has explained, "less drastic measures [than severance], such as limiting instructions, often will suffice to cure any risk of prejudice." *Zafiro*, 506 U.S. at 539). The Fifth Circuit agrees: "[i]n many instances, prejudice from failure to sever counts can be cured through an appropriate jury instruction, and [the Fifth Circuit has] noted that juries are presumed to follow such instructions". *United States v. Turner*, 674 F.3d 420, 429-30 (5th Cir. 2012). Thus, defendants must go further than general allegations that juries do not follow instructions and prove that "it is [not] within the capacity of the jurors to follow the court's admonitory instructions and accordingly to collate and appraise the independent evidence against each defendant solely upon that defendant's own acts, statements, and conduct." *United States v. Welch*, 656 F.2d 1039, 1054 (5th Cir. 1981) (quoting *Peterson v. United States*, 344 F.2d 419, 422 (5th Cir. 1965)).

The ultimate decision regarding severance is committed to the sound discretion of the trial court. *United States v. Nix*, 465 F.2d 90 (5th Cir. 1972); *see also Zafiro*, 506 U.S. at 538–39 ("Rule 14 does not require severance even if prejudice is shown; rather, it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion.").

> **B.    Strash has not demonstrated any specific prejudice from spillover evidence warranting a severance.**

In requesting the severance, Strash argues that because the government will present evidence regarding Count Two, and because he is not charged with Count Two,

this will necessarily lead to "spillover prejudice."  The government certainly recognizes the potential for such harm in cases involving multiple schemes, varying objects and purposes, or inflammatory evidence associated with certain defendants that otherwise would not apply to a defendant seeking severance.   But the government's evidence at trial will involve one—and only one— scheme: pharmacy owners bribing doctors.  As noted above, Count One specifically alleges that, in order to conceal the kickbacks to the physicians such as Strash, the owners paid the kickbacks disguised as returns on investment in managed services organizations (MSOs).   Count Two charges money laundering under the same theory of concealment: that the pharmacy owners concealed the kickbacks as returns on investment in MSOs to disguise the nature of the proceeds.  Thus, contrary to Strash's assertion, it is not a separate scheme "after and in addition to" to the conspiracy charged in Count One. (Mot. to Sever, at 10).  Count One plainly alleges the exact same concealment of kickbacks in as Count Two.

     Count One not only alleges concealment generally against all defendants but specifically alleges that *Strash* participated in this concealment.  For example, the Manner and Means section of Count One alleges that Strash received "funneled kickback payments" disguised as returns on investment through Defendant Hexamed, an MSO. (Ind., at ¶30.e).  The overt acts in Count One further list evidence of Strash receiving communications about his "distribution payments" from Hexamed.  (*Id*. at ¶31.y).  These distribution payments alleged in Count One are of the same variety as the transactions underlying the money laundering in Count Two.  In other words, there will be no "spillover prejudice" because the evidence supporting Count Two against the other

**Government Omnibus Response to Motion for Severance, Motion for Continuance—Page 8**

defendant physicians will be identical to the evidence presented against Strash to prove Count One.

Strash also references "significant volumes of evidence relating to other defendants" that may be irrelevant to him. (Mot. to Sever, at 6). The government concedes that there may be evidence presented at trial that is specific to one of the other nine codefendants in the case. Such is the reality of a multi-defendant trial. But, as the Fifth Circuit has previously held, "severance is not required merely because the Government introduced evidence admissible only against individual co-defendants." *United States v. Rocha*, 916 F.2d 219, 228 (5th Cir.1990). Severance on that basis alone would preclude multidefendant cases altogether.

A more relevant inquiry is whether the evidence presented against other defendants is prejudicial to Strash because it is more egregious and inflammatory. For example, in *United States v. Cortinas*, the court found severance appropriate for two defendants charged in a drug conspiracy where their participation predated the conduct of their codefendants and where the codefendants later engaged in more violent criminal activities after the two defendants had left the conspiracy. 142 F.3d 242, 248 (5th Cir. 1998). But no such problem exists here. The evidence against the other codefendants will be of the same character, if not exactly the same, as the evidence against Strash.

Strash has otherwise failed to identify what specific evidence, if any, will be so prejudicial to him that it jeopardizes any "specific trial right." Strash does not point to any expected testimony, emails, documents or other pieces of evidence that are not only unrelated to him but also inflammatory in a way that mere association would cast him in

**Government Omnibus Response to Motion for Severance, Motion for Continuance—Page 9**

a worse light. Instead, Strash only offers the "bare allegations of potential prejudice" that the Fifth Circuit has specifically held insufficient to justify severance.

Even if Strash could point to some prejudice, he has offered no reason why a jury instruction or other admonition by the Court could not cure it. For example, the Court can instruct the jury during trial when the evidence is presented that it can be used only against Strash's codefendants, though that is certainly not required. *Peterson*, 244 F.3d at 394 ("Although the better practice may be to give . . . a limiting instruction when the evidence is presented, . . . an instruction at the conclusion of trial will often be sufficient"). In *United States v. Bieganowski*, the Fifth Circuit found the jury instructions the district court gave in a multi-defendant, multi-count trial provided adequate protections by stating that:

> A separate crime is charged against one or more of the defendants in each count of the indictment. Each count, and the evidence pertaining to it, should be considered separately. The case of each defendant should be considered separately and individually. The fact that you may find one or more of the accused guilty or not guilty of any of the crimes charge[d] should not control your verdict as to any of [sic] other crime or any other defendant. You must give separate consideration to the evidence as to each defendant.

313 F.3d 264, 288 (5th Cir. 2002).[2] Ultimately, the Court has wide latitude to address any prejudice in any number of ways. Should Strash eventually articulate a specific prejudice, the parties can surely find a solution short of severance.

Finally, even if Strash was able to show a prejudice that could not be cured by a

---

[2] The most recent edition of the Fifth Circuit Pattern Jury Instruction contains a similar jury instruction. Fifth Circuit Pattern Jury Instruction, 1.23 (5th Cir. 2024).

**Government Omnibus Response to Motion for Severance, Motion for Continuance—Page 10**

jury instruction, such prejudice would be outweighed by the public's interest in judicial economy. Strash offers no prejudice so compelling to justify the government presenting the same case to two different juries. Every testifying witness and piece of evidence in the Strash trial would likely be presented again in the second trial against the remaining defendants. A severance would cause the exact inefficiencies that the courts favoring joint trials was meant to avoid. In short, it makes no sense to have two trials on the same scheme.

### C. Strash's rights under the Speedy Trial Act do not offer an independent basis for severance.

Strash uses his codefendants' request for a continuance to assert that he is ready to go to trial and, therefore, severance is appropriate. The Court should reject this gambit. For one, the government also opposes the continuance and would ask the Court to keep the same trial date for all ten defendants.

But even if the Court were to grant the continuance, Strash's Speedy Trial rights are not a sufficient basis to overcome the presumption against severance. This Court has already found that this is a "complex case" under Section 3161(h)(7)(B)(ii) of the Speedy Trial Act. (Dkt. 136 at 1 (citing 18 U.S.C. § 3161(h)(7)(B)(ii)). In granting the first continuance, the Court found that "the ends of justice served" by granting the continuance outweighed "the best interest of the public and the defendant in a speedy trial." (*Id*. at 2-3). The Court could grant the instant motion for continuance based on the same finding and also find that continuing the trial date for Strash would still comply with Section § 3161(h)(6) of the Speedy Trial Act, a provision that excludes from the

speedy clock calculation "[a] reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted[.]"  18 U.S.C. § 3161(h)(6).  *See United States v. Rivers*, No. 3:17-CR-460-D, 2018 WL 3549697, at *2 (N.D. Tex. July 24, 2018) (J. Fitzwater) (denying severance where codefendant moved for a continuance and defendant asserted his rights under the Speedy Trial Act); *United States v. Simpson*, No. 3:09-CR-249-D 06, 2010 WL 4340683 , at *4 (N.D. Tex. Oct. 26, 2010) (J. Fitzwater), *aff'd*, 408 F. App'x 830 (5th Cir. 2011) (denying severance on Speedy Trial rights grounds where case was deemed complex).

For all those reasons, the government respectfully requests that the Court deny Strash's motion for severance.

### III. The Government Opposes a Continuance of the Trial Date.

Nine codefendants ask for a continuance of the October 6, 2025, trial date to some date on or after January 20, 2026.  (Joint Mot. to Cont.).  In echoing the same issues raised in the first continuance motion, the defendants cite the voluminous amount of discovery and their need for time to prepare for trial.

The government is mindful of the amount of discovery in the case but notes that the last major discovery production occurred in November 2024.[3]  Thus, the current October 6, 2025, trial date will give defendants nearly eleven months to have reviewed it. While the government is mindful of the complexity of the case, it has not been made

---

[3] The government does not foreclose the possibility that, in complying with its ongoing obligations under Rule 16, it will make additional discovery productions in the future but, at this time, does not expect any substantial productions.

aware of any specific issue related to trial preparation to warrant additional time. The indictment alleges conduct that occurred as far back as twelve years ago. Any further delay jeopardizes the government's ability to marshal evidence and call witnesses that are able to accurately recall events from the period at issue.

Accordingly, the government respectfully requests that the Court deny the defendants' motion for a continuance and continue with the October 6, 2025, trial date.

### IV.  The Government Does Not Oppose a Short Continuance of the Pretrial Motions Deadline.

As noted in the Certificate of Conference to the Joint Motion to Continue, the government does not oppose a short continuance of the pretrial motions deadline for all defendants.

Respectfully submitted,

NANCY E. LARSON
ACTING UNITED STATES ATTORNEY

*/s/ Marty Basu*
CHAD E. MEACHAM
Assistant United States Attorney
Texas Bar No. 00784584
Email: chad.meacham@usdoj.gov
MARTY BASU
Assistant United States Attorney
Illinois Bar No. 6302360
Email: marty.basu@usdoj.gov
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Tel: (214) 659-8600
Fax: (214) 659-8809

**Government Omnibus Response to Motion for Severance, Motion for Continuance—Page 14**